## SNYDER and ROBERTS' ESTATE.

### APPEAL.

Where an account settled by assignees under a voluntary assignment for
the benefit of creditors, was referred to auditors, who reported that they
had adjusted the account, and that there was a balance of a certain sum
in the hands of the assignee, it was *held*, that the Court might, on the
application of one creditor refer to the auditors to report, upon a distri-
bution of the fund, and that they were not bound, on the application of
the assignee, to grant an issue to try the validity of the petitioning cred-
itor's debt.

THIS was an appeal from a decree of the Court of Common
Pleas for the City and County of Philadelphia, in the matter of
the settlement of the accounts of John Flanagan, assignee of
Jacob Snyder and Charles W. Roberts.

It appeared from the record of the Court below that on the
12th of May, 1835, the inventory and appraisement were filed,
and bond given. On the 11th of May, 1836, the accounts of the
assignee were filed. On the 25th of June, 1836, auditors were
appointed to settle and adjust their accounts. The report of the
auditors, which was made on the 28th of September, 1836, stated
that they had settled the accounts, and found a balance in the
hands of the assignee, of $6632 87 independently of an unex-
plained balance of the inventory. On the 7th of November,
1836, the petition of Thomas W. Eayre was presented, setting
forth that he was a creditor of Snyder and Roberts, and praying
that the auditors be directed to report a distributive account of
the moneys in the hands of the assignees. The Court made an
order accordingly; and on the 25th of March, 1837, the report
of the auditors on the distribution was filed, of which the mate-
rial parts are as follows.

"The assignment of Snyder and Roberts, of which a copy was
submitted to the auditors, bears date the first day of April, A. D.
1835. By its provisions, the creditors of the firm are divided
into three classes, according to the order of preference of pay-
ment. Those of the first class are specified by name and amount,
and are to be paid unconditionally: those of the second class are
[*496] also *specified in like manner, with the addition of cre-
ditors under fifty dollars. They are not to be paid
unless they released "before 12 o'clock M. of the first day of
May," A. D. 1835. The third class comprehends all the remain-
ing creditors who shall have executed the release within the spe-
cified time.

(Snyder and Roberts' Estate.)

The creditors of the first class were duly satisfied, and settlements made by the assignee, with all the creditors of the second and third classes, who had executed the release, except Thomas W. Eayre, a releasing creditor of the third class. These several payments appear in the accounts of the assignee, annexed to the former report of the auditors, to which reference is craved.

The claim of Mr. Eayre was, in part, disputed by the assignee; and determination of the amount to which he was fully entitled, was the only matter to be settled by the auditors.

Thomas W. Eayre and Charles W. Roberts were co-partners in trade, under the firm of Eayre & Roberts. The partnership was dissolved in December, 1833. Mr. Eayre retired from the concern. Mr. Roberts formed a new partnership with Dr. Jacob Snyder, and the new firm purchased the stock of Eayre & Roberts, at the appraised valuation of $10,221 44. The affairs of the old partnership were to be wholly settled by Mr. Eayre, who had furnished all the capital. As a matter of convenience, both to the new firm, by retaining the custom of Eayre & Roberts, and to the customers themselves, the books of the old partnership were left at the store, and moneys were received and payments made, from time to time, by C. W. Roberts, with the consent of Mr. Eayre.

On the 5th of June, 1834, a settlement was made between Mr. Eayre and Mr. Roberts, of the affairs of Eayre and Roberts transacted by the latter. By a receipt of that date, Roberts acknowledges the "repayment," by T. W. Eayre, of the money paid by the former "in May last," which money was paid on account of the old firm, and also of $31 42 "borrowed of Snyder and Roberts at various times to this date." Roberts had paid about $800, either to Eayre or on account of the old firm, and had received $694 of debts due the firm, and $100 dollars from Eayre himself.

Between this settlement and the 20th of January, 1835, C. W. Roberts received on account of Eayre and Roberts, the sum of $1335 37, and the new firm received $19 on the same account, in all $1353 37.

Payments were made, during the same time, for Eayre and Roberts to the amount of $1353 54, besides the sums hereafter noted as admitted by T. W. Eayre.

Large payments had also been made by Snyder and Roberts to Mr. Eayre on account of the stock of the old firm, in addition to which credit is claimed for the $1353 54. It is alleged that this sum was paid by the *firm* of Snyder and Roberts, out of their own private funds, for Eayre and Roberts. Mr. Eayre alleges that the *payments were made by C. W. Roberts alone, out of the moneys collected by him. These funds are claimed by [*497]

(Snyder and Roberts' Estate.)

Mr. Roberts on account of his share of the estimated profits of the old firm.

The appropriation of the payments formed the great question submitted to the auditors; and the matter has been thoroughly and carefully investigated by them. Numerous witnesses were examined, among the rest Mr. Roberts, provisionally; the releases necessary to perfect his competency having been obtained or promised if required. The books of the two firms were also produced and examined. In the opinion of the auditors, credit should not be allowed to Snyder and Roberts for the sum in dispute: their reasons are as follows:

1st. The payments were made without the consent of T. W. Eayre, and the right to make them disputed by him as soon as he became aware of the claim set up by Snyder and Roberts. It is believed to be a well-settled principle, that no one can make himself the creditor of another by paying his debts without his knowledge, authority, or approbation, (1 Livermore on Agency, 52; 8 T. R. 310; Ib. 610–13; 5 Burr. 2727). Snyder and Roberts might have purchased the debts of Eayre and Roberts, and thus have obtained a set-off, but no such purchase was alleged.

2d. Notes to a considerable amount, belonging to Eayre and Roberts, and forming part of the collection in controversy, were collected through the medium of the bank account of Snyder and Roberts, and passed to their credit by the bank. Supposing the payments to have been made by them, they were partially in funds from the resources of Eayre and Roberts.

But it is by no means clear that credit was claimed by Snyder and Roberts for these payments, at the time they were made, because—

3d. They are not charged to Eayre and Roberts on the ledger, but simply on the cash-book of the new firm, and even there not at the times when the payments were made; but with a single subsequent exception, they are all charged in a mass on the 24th of December, 1834. Now, the cash accounts had been continually balanced in the usual manner, during the actual times of the payments, and these balances must constantly have been erroneous, and have represented a larger balance in hand than actually existed, if the payments in question were made from the funds of the new firm. The cash account, however, appears to have been so irregularly kept as to be of no weight whatever.

4th. The receipts taken for the payments do not run in the names of Snyder and Roberts, but in the name of C. W. Roberts alone; sometimes "as one of the administrators of John Roberts," to whose estate Eayre and Roberts had administered.

(Snyder and Roberts' Estate.)

It must be observed, however, that the receipt for the payment of a note of Eayre and Roberts in favour of N. Lennig, for $500, which has been admitted *to be a correct set-off [*498] by Eayre, runs in the same form. The admission, however, seems to have been made by Eayre as a sort of compromise at a time when an amicable settlement was attempted to be made between him and the assignee.

Other reasons might be adduced in support of the decision of the auditors; the question of the right of one partner to bind another, after dissolution, having been fully discussed; but it is believed that those already specified are sufficient. As to the claim made by Mr. Roberts to hold the collections as his share of the profits of Eayre and Roberts, it was not proved that any profit was made. No regular settlement of the partnership affairs has ever been made, and there still are large outstanding debts due by the firm.

The sum due to T. W. Eayre from the funds assigned, may be stated as follows:—

Snyder and Roberts, Drs.

| | | |
|---|---:|---:|
| To amount of appraisement of stock, taken by Snyder and Roberts at the valuation, payable to T. W. Eayre by the terms of the dissolution of Eayre and Roberts, | | $10,221 44 |
| Cr. by cash paid on account, | $3000 00 | |
| By ditto ditto, | 500 00 | |
| By payment of N. Lennig's note, | 500 00 | |
| By amount of stock sold while making appraisement, | 250 00 | |
| By account against T. W. Eayre, | 214 48 | |
| By do. against Eayre and Stretch, | 22 30 | |
| By order of M. Fithian on Eayre and Roberts, | 10 54——4497 32 | |
| | | $5724 12 |

The question of interest involved peculiar difficulties, and the claim to it was not pressed by Mr. Eayre to avoid them. The auditors have reported conformably.

| | | |
|---|---:|---:|
| The balance in the hands of the assignee, stated in the former report of the auditors, was | | $6632 87 |
| Deduct advertisement, | $3 00 | |
| Auditors fees, | 100 00——103 00 | |
| Remaining for distribution, | | $6529 87 |

(Snyder and Roberts' Estate.)

*Distribution.*

To Thomas W. Eayre, as stated
   above,                                        $5724 12
To the assignee, to be distributed
   according to the provisions of
   a second assignment made by
   Snyder and Roberts,                       805 75——6529 87

[*499]     *To this sum of $805 75 must be added the collec-
tions made of funds included in the inventory and ap-
praisement of the assigned estate of Snyder and Roberts,
not included in the accounts formerly audited. The difference
between the inventory and the account, by the former report, ap-
pears to have been $6750 24. So much of this as may be col-
lected must form the subject of the account under the second as-
signment."

Exceptions were filed to this report, which, however, were
overruled, and the report confirmed on the 12th of September,
1837.

An appeal was then taken to this Court and the following spe-
cifications filed.

" 1. The Court below erred in re-committing the former con-
firmed report of the auditors, merely for the purpose of making
distribution.

2nd. The said auditors were incompetent to make distribution
therein.

1st. Because no such power is recognised by law.

2d. If it exists in cases of assignees' accounts it can be exer-
   cised only in cases of a deficiency of assets, and where
   several claim the fund under the assignment; and not
   where, as in this case, there is but a single creditor, and his
   claim a disputed one, and the assets are more than sufficient
   to pay it in full.

3d. Because the question entertained by the auditors
   was one of mere fact, and proper for a jury—never-
   theless, the Court rejected the appellant's application for
   an issue before the auditors proceeded to act, and after-
   wards.

3d. The report of the said auditors furnishes but a portion of
the evidence; and that portion is insufficient to inform the con-
science of the Court as to the justice or propriety of the decree
of distribution.

4th. The said report is vague, uncertain, and wholly inade-
quate to sustain a decree of the Court thereon.

5th. The auditors erred in allowing Thomas W. Eayre the

(Snyder and Roberts' Estate.)

whole amount of his claim, in opposition to the evidence, which showed that he had been paid by Snyder and Roberts, all beyond the sum of $4509 76.

6th. The auditors erred in all their legal propositions.

7th. The general errors."

Mr. *Haly*, for the appellant.

*The assignee applied to the Court below for an issue [*500] to try the fact of the appellee being a creditor; but the Court refused it. It was said, that the Court had no power to direct an issue where there was only one applicant; but this was a mistake. The act of 1836 gives the same power to the Common Pleas that the act of 1832 gave to the Orphans' Court; and there it is general. The Court had no power to refer to auditors in such a case. It is true, that in *Gray* v. *Bell*, (4 Watts, 410,) it is said, that an action will not lie against assignees, till there has been a decree of the Court: yet there no account was settled. There is no necessity for auditors where there is but one claimant.

Mr. *Price, contra*, was stopped.

KENNEDY, J. delivered the opinion of the Court.

We think there is nothing in the exceptions taken to the decree of the Court, in this case by the appellant.

It is alleged, that the Court below erred in recommitting the former confirmed report of the auditors, merely for the purpose of making distribution. The first report of the auditors did not set forth the evidence, or the facts necessary to enable the Court to decree a distribution or disposition of the balance which the auditors found in the hands of the assignee; and hence it became requisite that the Court should be informed, whether all the creditors, having claims upon the fund assigned, were paid or not; and if not, to ascertain who they were, that held such unpaid claims, and the amount thereof. Then the most convenient and ready mode, certainly, and perhaps as correct as any other, of doing this, was to refer the matter for this purpose to auditors, that they might report to the Court the facts and the evidence relating thereto, in order that the Court might distribute the trust fund still on hand, agreeably to the rights of the parties interested and concerned therein. And we must say, that we are unable to perceive any thing in the acts of assembly on the subject, which seems to prohibit this course.

Again, it is objected, that the auditors were incompetent to make a distribution. It is, however, a misapprehension to suppose that the auditors were to make an order to this effect: that

(Snyder and Roberts' Estate.)

unquestionably belonged to the Court alone: their authority, in this respect, could not even have been delegated by them to the auditors. The Court are therefore only to be considered as having recommitted the matter to the auditors, that they might report to the Court in what manner and how the trust fund had been distributed and applied by the assignee so far as he had done so; and likewise the names of the claimants, together with the nature and amount of their respective claims to the balance; and the manner also in which, from the facts and evidence to be reported by the auditors, they should think the same ought to be [*501] distributed. But still, it must be understood, *that this was only to be done for the information of the Court, so that the Court might decree thereon; and of course, if the Court should approve of the distribution reported or proposed by the auditors, it was unnecessary for the Court to do more than to confirm it; which made the distribution the act of the Court to all intents and purposes.

It is also further objected, that because there appeared to be but one person making a claim upon the balance in the hands of the assignee, when the auditors had the matter recommitted to them, with a view to a distribution, the Court were not authorized to recommit the case to the auditors for such purpose. And again, that the claim of this person being contested, a jury ought to have been called in, as it was requested by the assignee, to have decided upon it. Now, although Thomas W. Eayre was the only person, who, by his petition to the Court, made a claim upon the balance, as a creditor of the assignors, yet there might have been, for aught the Court could well know, others who had just claims thereon, and in amount, too, more than sufficient to absorb the whole of it; and therefore it could not be improper in the Court to appoint auditors to meet the exigency that might exist. And as to the calling in of a jury to decide upon the merits of the petitioner's claim, that was clearly discretionary with the Court. They were to judge whether the intervention of a jury was requisite or not for such purpose. It is also further objected, that the auditors did not report the whole of the evidence; and that enough has not been reported to show that the distribution is right. The truth of the first part of this objection, even admitting it to be good, has not been shown: and as to the latter part thereof, it does not appear that injustice has been done by the decree of the Court: on the contrary, we think it is well sustained in law by the evidence, and sufficiently certain to give it validity. The decree of the Court below is therefore affirmed.

Decree affirmed.

Cited by Counsel, 7 Watts & Sergeant, 30.